UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH KRUMMICK, BARBARA KRUMMICK, J.K., a minor, V.K., a minor, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 6243 |
| VILLAGE OF EVERGREEN PARK, IL, VILLAGE OF EVERGREEN PARK POLICE OFFICER DANIEL T. McKEOWN, VILLAGE OF EVERGREEN PARK TRUSTEE DANIEL F. McKEOWN, and MAYOR JAMES SEXTON, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motions of Defendants Village of Evergreen Park (the "Village"), Village of Evergreen Park Police Officer Daniel T. McKeown ("Officer McKeown"), Village of Evergreen Park Trustee Daniel F. McKeown ("Trustee McKeown"), and Mayor James Sexton ("Mayor Sexton") (collectively "Defendants") to partially dismiss the Complaint brought by Plaintiffs Keith Krummick, Barbara Krummick, J.K., a minor, and V.K., a minor (collectively "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motions are granted in part and denied in part.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiffs' Complaint are accepted as true. The Court draws all reasonable inferences in favor of Plaintiffs. Plaintiffs Keith and Barbara Krummick are citizens of the United States, and at all relevant times, resided in the Village of Evergreen Park, Illinois. Plaintiffs V.K. and J.K. Krummick are the two minor daughters of Plaintiffs Keith and Barbara Krummick, and at all relevant times, resided with their parents in the Village of Evergreen Park, Illinois.

As for Defendants, Trustee McKeown was allegedly employed as a trustee of the Village of Evergreen Park. Plaintiffs allege that Trustee McKeown was one of the chief policymakers of the Village of Evergreen Park and was responsible for its policies, practices, and customs. Trustee McKeown is sued in both his individual and official capacities. Officer McKeown was allegedly employed as a police officer by the Village of Evergreen Park. Plaintiffs allege that at all relevant times, Officer McKeown was acting under color of state law and within the course, and scope, of his employment as a police officer for the Village of Evergreen Park. Officer McKeown is also sued in both his individual and official capacities. Plaintiffs allege that Mayor Sexton is the mayor of the Village of Evergreen Park and is the chief policymaker of both the Village and the Village of Evergreen Park's Police Department. Plaintiffs allege that Mayor Sexton was also responsible for the Village of Evergreen Park's policies, practices, and customs. The Village is a municipal corporation incorporated

under the laws of the State of Illinois and is located in Cook County. The Village allegedly operates the Village of Evergreen Park's Police Department, and at all relevant times, was the employer of Officer McKeown and Trustee McKeown.

Plaintiffs allege that from 2012 through January 2015, Trustee McKeown and Officer McKeown regularly, and continuously, harassed and discriminated against Plaintiffs with malicious motives and without any rational basis. They were (and are) apparently neighbors. Plaintiffs state that the Village, including its chief executive officer, Mayor Sexton, allegedly encouraged and condoned this harassment and discrimination despite Plaintiffs' repeated pleas for help. From 2012 through 2014, Plaintiffs allege that Officer McKeown would regularly stalk Plaintiffs. This stalking would often be done while Officer McKeown was allegedly in his police uniform and in his Village of Evergreen Park police vehicle. Plaintiffs provide examples of the alleged stalking, including from March or April of 2012, when Officer McKeown allegedly followed Barbara Krummick and her minor daughter, J.K., to a Walmart parking lot while Officer McKeown was in his marked police vehicle. Plaintiffs allege that a similar incident happened at a Speedway gas station on June 6, 2012, where Officer McKeown followed and stalked V.K., a minor. On September 5, 2013, Plaintiffs allege that Officer McKeown, dressed in his police uniform and while operating his police vehicle, intentionally intimidated Plaintiffs by following Keith Krummick, and his minor daughter, V.K., as they drove to her school. On February 7, 2014, Plaintiffs allege that Keith Krummick was taking photos outside of his home

when Officer McKeown's wife allegedly made a phone call to Officer McKeown. Within minutes, Officer McKeown allegedly drove up in his police vehicle and glared at Keith Krummick in an attempt to intimidate him. Between 2012 and 2014, Officer McKeown would allegedly glare at the Krummick family as they came home at all hours of the day and night. On numerous occasions, Officer McKeown would allegedly stand on his porch and glare at Plaintiffs' minor daughters, V.K. and J.K, and their friends. On August 14, 2014, at approximately 12:21 P.M., Officer McKeown was allegedly driving his marked police vehicle when he attempted to strike Barbara Krummick in front of her minor daughters. The next day, Officer McKeown allegedly attempted to strike Keith Krummick with a different vehicle.

In addition to stalking, Plaintiffs allege that Officer McKeown and Trustee McKeown regularly and intentionally damaged their property between 2013 and 2014. On November 15, 2013, Plaintiffs claim that Trustee McKeown intentionally bent the passenger mirror of Keith Krummick's 1995 Tahoe, which was observed by Keith Krummick and captured on videotape. Despite Plaintiffs' report of the incident, they state that the Village of Evergreen Park's Police Department took no action because of the alleged policy and practice by the Village of Evergreen Park to allow its trustees and police officers to commit misconduct with impunity. On January 18, 2014, Plaintiffs allege that Trustee McKeown packed snow onto the passenger side of Keith Krummick's Chevy Tahoe with his snow blower, causing $792.46 in damage.

Plaintiffs also allege that Officer McKeown and Trustee McKeown used noise from radios and car horns to constantly harass, intimidate, and discriminate against Plaintiffs between 2012 and 2014. For instance, on February 11, 2014, Trustee McKeown allegedly honked his car horn numerous times while driving by the Krummick residence. The honking incidents were allegedly recorded and turned over to Mayor Sexton and Police Chief Saunders for investigation purposes. Plaintiffs also claim that this conduct was part of a broader pattern where Officer McKeown and Trustee McKeown repeatedly honked their horns whenever they passed the Krummick residence. Plaintiffs have allegedly documented dates of this conduct from at least September 12, 2013 and includes upwards of thirty-five (35) incidents. Plaintiffs insist that this conduct has occurred by Trustee McKeown as recent as January 12, 2015 and by Officer McKeown as recent as July 11, 2015.

Plaintiffs claim that the alleged harassment and discrimination was done by Trustee McKeown and Officer McKeown, in part, because they knew that they could act with impunity in the Village of Evergreen Park without any risk of being criminally prosecuted. For instance, on July 24, 2014, Trustee McKeown apparently told police officers that responded to a disturbance that they could not do anything to him because he would call Mayor Sexton. Plaintiffs allege that Trustee McKeown's comment was made because Mayor Sexton had repeatedly and routinely enabled Trustee McKeown's misconduct in the past. Plaintiffs also claim that the Village of Evergreen Park Police Chief Michael D. Saunders acknowledged in writing that

Mayor Sexton was personally aware of the harassment and discrimination being regularly perpetrated by Trustee McKeown and Officer McKeown, but Mayor Sexton allegedly did nothing to stop it.

In February 2014, Chief Sauders allegedly spoke with Trustee McKeown about the honking of the car horns. Barbara Krummick allegedly sent an email to Mayor Sexton complaining of Officer McKeown and Trustee McKeown's conduct. In a letter dated March 11, 2014, Chief Saunders allegedly explained that he had spoken with Trustee McKeown, who admitted to the honking harassment. Additionally, the McKeowns allegedly blasted loud music at a decibel level that violated local laws. Plaintiffs allege that this conduct was part of a broader pattern of harassment and the noise disturbances started as early as July 5, 2013 and include more than a dozen instances. For instance, on July 24, 2014, Officer McKeown allegedly blasted his radio toward the Krummick residence at a documented decibel level of 91. When the Deputy Chief and the Village of Evergreen Park's Police Department responded to the noise complaint, Trustee McKeown allegedly threatened to call Mayor Sexton. Chief Saunders allegedly ordered Officer McKeown to appear in his office on the following Monday. Plaintiffs claim that Officer McKeown subsequently resigned from his position with the Village of Evergreen Park's Police Department as a result of his disciplinary proceedings from the alleged misconduct.

Plaintiffs allege that they were singled out from other neighbors by the McKeowns, and harassed through stalking, intentional destruction of property, and

various forms of noise. Due to this alleged pattern of misconduct, Plaintiffs claim that Trustee McKeown was convicted on May 19, 2015 for disorderly conduct related to the harassment that he allegedly perpetrated against Plaintiffs over a period of approximately two years. At a hearing, Plaintiffs allege that Cook County Fifth District Chief Judge Raymond Jagielski stated to Trustee McKeown, "[i]n this court's opinion, we see you as a bully."

Even after Trustee McKeown was convicted in connection with his alleged pattern of harassment, intimidation, and discrimination, Plaintiffs claim that Mayor Sexton continued to encourage Trustee McKeown and Officer McKeown's behavior. Following Trustee McKeown's conviction, Plaintiffs allege that Mayor Sexton publicly insisted that Trustee McKeown's position as a trustee of the Village of Evergreen Park was "secure" and attempted to minimize the incident by calling the issues between the parties a "neighbor problem" in the Reporter Newspaper, a publication that serves the areas of Worth, Chicago Ridge, Palos Hills, Hickory Hills, Oak Lawn and Evergreen Park. Plaintiffs maintain that the Village's "grossly inadequate and untimely investigation into the harassment allegations made by the Krummicks[,] coupled with Trustee McKeown facing no meaningful professional repercussions was done pursuant to the express and/or de facto policy and practice of the Village of Evergreen Park, where public officials know that they are free to harass, intimidate, and discriminate[] against citizens without any risk of any meaningful criminal investigation by the Village of Evergreen Park Police Department."

On July 16, 2015, Plaintiffs filed their six-count Complaint, alleging: (i) a Fourteenth Amendment Equal Protection "class of one" claim against Trustee McKeown, Officer McKeown, and Mayor Sexton (Count I); (ii) a municipal policy claim under 42 U.S.C. § 1983 ("Section 1983") against the Village of Evergreen Park (Count II); (iii) a claim for intentional infliction of emotional distress against Trustee McKeown, Officer McKeown, and Mayor Sexton (Count III); (iv) a federal and state conspiracy claim against Trustee McKeown, Officer McKeown, and Mayor Sexton (Count IV); (v) a *respondeat superior* claim against Trustee McKeown, Officer McKeown, and Mayor Sexton (Count V); (vi) and a statutory indemnification claim under Illinois law against the Village of Evergreen Park for the actions of its employees (Count VI). On September 10, 2015, the Village of Evergreen Park and Mayor Sexton filed their joint motion to dismiss. On September 18, 2015, Officer McKeown filed his partial motion to dismiss and on October 2, 2015, Trustee McKeown filed his partial motion to dismiss.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise her right to relief above a speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must allow the court to draw the reasonable inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 678. "[I]n order to withstand a motion to dismiss a complaint must allege facts sufficiently setting forth the essential elements of the cause of action." *Bell & Howell Fin. Servs. Co., v. St. Louis Pre-Sort, Inc.*, No. 97 C 6063, 1999 WL 35316, at *3 (N.D. Ill. Jan. 11, 1999) (citation omitted).

## DISCUSSION

## I. Count I—Fourteenth Amendment Equal Protection "Class of One" Claim

The Court begins with Plaintiffs' "class of one" equal protection claim against Trustee McKeown, Officer McKeown, and Mayor Sexton. All three Defendants move to dismiss Count I for similar reasons. Under Count I, Plaintiffs allege that the "actions of Trustee McKeown[] and Officer McKeown in singling Plaintiffs out as a class unto themselves were done for arbitrary, irrational[,] and discriminatory reasons, and based upon personal animus." Plaintiffs claim that they were victims of

intentional discrimination and that Trustee McKeown and Officer McKeown knew, or should have known, that they had no justification for their actions based upon their public duties as employees of the Village, as state actors, and under the color of law. Plaintiffs further allege that Trustee McKeown and Officer McKeown lacked any rational basis for singling out Plaintiffs as they did during the course of their public duties. As for Mayor Sexton, Plaintiffs assert that he was aware of the discrimination perpetuated by the McKeowns and could have prevented it by "simply calling Trustee and/or Officer McKeown and letting them know that he would not protect them if they were violating the law." However, according to Plaintiffs, Mayor Sexton allegedly allowed the conduct to continue, and even encouraged it.

### A. "Class of One" Claim Against McKeown Defendants

For a "class of one" claim, Plaintiffs "must plead" that they "[were] 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *D.B. ex rel. Kurtis B. Kopp*, 725 F.3d 681, 685-86 (7th Cir. 2013) (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008)). These requirements are not satisfied by allegations that Plaintiffs were "singled out" or "harassed" without reference to others "similarly situated," or even that the harassers bore Plaintiffs' "personal animus." *See Kopp*, 725 F.3d at 686 ("it is clear that an allegation of improper motive does not necessarily overcome the presumption of rationality"). The Seventh Circuit has allowed "class of one" claims in cases where "plaintiffs were able to exclude rational explanations for why local

officials targeted them." *See Chavarin v. Westchester Pub. Library Bd. of Trustees*, No. 15 C 2040, 2015 WL 5117859, at *4 (N.D. Ill. Aug. 28, 2015) (citing cases).

Unlike what this Court found in *Chavarin*, Plaintiffs in the instant matter have provided allegations for us to conclude that "similarly situated" comparators exist. Plaintiffs allege that they were "singled out from other neighbors by Officer McKeown and Trustee McKeown and harassed through stalking, intentional destruction of property[,] and various forms of noise." Although Plaintiffs do not explicitly refer to these neighbors as "comparators," we find that these neighbors, who live in the same neighborhood and village as Plaintiffs, qualify as "similarly situated" comparators. It is plausible that these neighbors could have been subject to the same alleged harassment by Defendants as Plaintiffs allege in their Complaint.[1] Allowing the parties to subject the "class of one" claim to discovery will allow the Court to determine if Plaintiffs' neighbors are suitable comparators. But at the present posture, Plaintiffs have alleged sufficient facts about the comparators to survive dismissal.

Additionally, Plaintiffs are able to exclude rational explanations for why local officials targeted them by including allegations to show that they were intentionally treated differently from these neighbors. *See Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) (where the Seventh Circuit acknowledged that despite the lack of a comparator, a "class of one" claim can survive when plaintiffs were able to exclude rational explanations for why local officials targeted them). Plaintiffs'

---

[1] The fact that friends of the Krummick's minor daughters were present during the alleged harassment does not destroy their claim for "class of one" discrimination.

Complaint does not presently reveal a rational basis for Defendants' behavior. Moreover, Trustee McKeown and Officer McKeown's alleged conduct goes beyond the tortious allegations of stalking and harassment that this Court discussed in *Chavarin*, as Plaintiffs not only contend that they were harassed through stalking, but also subject to alleged threats of violence, damage to their personal property, and interference with the enjoyment of their home. *See Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (citation omitted) (where a "classic class-of-one claim[]" exists when a defendant acts "with no conceivable basis [for their] actions other than spite or some other improper motive . . .".); *see also Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *3 n.2 (N.D. Ill. June 25, 2007) ("Verbal abuse" alone is insufficient to support an equal protection claim; a plaintiff must allege "something more than an expression of hostility to state a claim under the Constitution.").

### B. McKeown Defendants Acting Under Color of State Law

In addition to allegations involving a "class of one," Plaintiffs must also include the prerequisites for a Section 1983 claim, including "that a governmental official, acting under the color of state law, deprived [them] of a right secured by the Constitution or laws of the United States." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. Cnty of Boone, Ill.*, 483 F.3d 454, 459 (7th Cir. 2007)). For purposes of a Section 1983 claim, a police officer "acts under the color of law if he is clothed with authority of the state, and is

purporting to act under that authority." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). "Private actions taken in furtherance of personal interests, even if performed by an officer while on duty, are insufficient, by themselves, to constitute actions taken under 'color of state law.'" *Williams v. Farmer*, No. 12 C 01663, 2013 WL 1156426, at *3 (Mar. 20, 2013). Moreover, "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945). "Whether a particular action was under color of state law depends largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Estate of Sims*, 506 F.3d at 516. Therefore, an officer can act under color of state law even if he is off-duty. *See United States v. Christian*, 342 F.3d 744, 751 (7th Cir. 2003) (where an off-duty officer wearing a uniform and displaying a badge acted under the color of state law).

Plaintiffs allege that Trustee McKeown and Officer McKeown were state actors, acting under the color of state law. More specifically, Plaintiffs allege that Officer McKeown was in his police uniform and in his marked Village of Evergreen Park police vehicle, and that Trustee McKeown utilized his authority when he: (i) stalked them; (ii) attempted to injure Plaintiffs with his vehicle; and (ii) told police officers that responded to a disturbance that they could not do anything to him because he would call Mayor Sexton. Plaintiffs do not specifically allege that Officer McKeown was on duty at the time of the incidents or engaged in the performance of

official acts, and do not specify when Trustee McKeown was "on duty" as a trustee of the Village. Even so, Plaintiffs still provide the necessary factual context to plausibly show that Officer McKeown and Trustee McKeown were acting in their capacities as a trustee and a police officer of the Village when allegedly discriminating against Plaintiffs. The Court acknowledges that discovery is necessary to "flesh out the details of what happened" and to determine: (i) whether Officer McKeown was ever on duty during the incidents; (ii) the circumstances surrounding Trustee McKeown's responsibilities as a trustee of the Village; (iii) the specific acts that Officer McKeown and Trustee McKeown engaged in; and (iv) whether those actions related in some way to the performance of their duties as public employees, *Moss v. Singleton*, No. 14 C 6424, 2015 WL 3818718, at *7 (N.D. Ill. June 18, 2015), and indeed, these facts will reveal whether the McKeowns's alleged actions reflect those of a private citizens, as they vehemently contend, or as public officials under the color of state law.

### C. "Class of One" Claim Against Mayor Sexton

To assert supervisor liability under Section 1983, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see. [He] must in other words, act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chi.*, 856 F.3d 985, 992-93 (7th Cir. 1988). Plaintiffs allege in their Complaint that Mayor Sexton allowed Trustee McKeown and Officer McKeown's conduct to continue, and even encouraged it. Likewise, Plaintiffs include factual allegations about a written submission by the

Village Police Chief that states Mayor Sexton was personally aware of the harassment and discrimination being regularly perpetrated by Trustee McKeown and Officer McKeown, but that he failed to intervene.

In his defense, Mayor Sexton argues that Plaintiffs' "class of one" claim fails against him because he is an independently elected officer of the Village of Evergreen Park and the municipal code does not vest him with any authority or power to remove, suspend, or otherwise discipline a village trustee or a village police officer. Mayor Sexton contends that he does not hold a supervisory role over police officers or trustees. He insists that the power to discipline or terminate police officers is vested solely with the Board of Fire and Police Commissioners and that his role with the Village's trustees is limited to him presiding over all meetings of the Board of Trustees and only voting when there is a tie. Mayor Sexton provides the municipal code as proof that he is not the supervisor of either Trustee McKeown or Officer McKeown, but Plaintiffs point out (and the Court agrees) that the municipal code arguably allows Mayor Sexton some authoritative power to:

> (i) supervise the conduct of *all appointed officers* and see that they faithfully and efficiently discharge the duties of their respective offices; (ii) *inquire into all reasonable complaints* made against them and cause their neglects or violations of duties to be promptly corrected; (iii) from time to time, give the Board of Trustees such information relative to the affairs of the Village as he may deem proper; and (iv) recommend to their consideration any measure he may deem expedient, tending to the well-being, security and improvement of the Village. (emphasis added).

As a result, Mayor Sexton's references to the municipal code do not currently convince the Court that he is completely devoid of any supervisory role over Trustee McKeown or Officer McKeown. *See Hahn v. Walsh*, 762 F.3d 617, 632 (7th Cir. 2014) (courts do not "evaluate the veracity of the pleaded facts of the ultimate merits of the plaintiff's claim" on a motion to dismiss). We discuss our hesitancy to rely on the municipal code at this stage of litigation more thoroughly in Part II, *supra*. Plaintiffs technically allege in their Complaint that Mayor Sexton acted under the color of state law in Count II (the *Monell* claim). However, since Plaintiffs are relying on the supervisory liability of Mayor Sexton, "[t]he traditional definition of acting under color of state law requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The Court finds that it is conceivable that Mayor Sexton was acting in his official capacity, and under the color of state law, when allegedly failing to intervene and subsequently promoting Trustee McKeown and Officer McKeown's treatment of Plaintiffs. Plaintiffs have, therefore, substantiated a viable equal protection "class of one" claim under Section 1983 against Trustee McKeown, Officer McKeown, and Mayor Sexton.

## II. Count II—*Monell* Claim

Turning to Count II, Plaintiffs have asserted a municipal policy claim under Section 1983 against the Village of Evergreen Park only. This municipal policy claim

is also referred to as a *Monell* claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In the Complaint, Plaintiffs allege that the Village is liable under a *Monell* theory for its purported "inadequate system of training and supervising its trustees and mayor regarding the appropriate use of their official powers." Plaintiffs also claim that the Village is responsible in "failing to adequately and meaningfully train, supervise, or discipline its other officers." The Village now moves to dismiss Count II, arguing that Plaintiffs' factual allegations do not support an official policy or custom.

It is well-settled that a municipality is not vicariously liable under Section 1983 for the actions of its employees unless the employee acted pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 658. A plaintiff may establish an official policy or custom by showing: (i) an express policy that, when enforced, causes a constitutional deprivation; (ii) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (iii) the act of a person with final policy-making authority. *See Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

Plaintiffs have alleged that the Village of Evergreen Park has an express policy of failing to train and supervise its mayors, trustees, and police officers regarding the appropriate use of their power and allowed Trustee McKeown and Mayor Sexton to act as the final policymakers. More specifically, Plaintiffs claim that: (i) the Village is

responsible for the creation and adoption of rules and regulations for its governance and retains policymakers that train and supervise its police officers about the legitimate use of police powers; (ii) the Village's trustees have final policy-making authority; (iii) the Village has a grossly inadequate system of training and supervising its trustees and mayor regarding the appropriate use of their official powers; and (iv) the Village's failure to properly train, discipline, monitor, control and supervise its police officers, trustees and mayor was the direct and proximate cause of the injuries to Plaintiffs. In their Response, Plaintiffs insist that they have alleged that the Village had an express policy of "failing to train and supervise its mayor, trustees and police department regarding the appropriate use of police power." However, in their Complaint, Plaintiffs' do not specifically refer to this "policy" as an express policy. We find that Plaintiffs' allegations about this apparent "express policy" align more with a widespread custom or practice, not an express policy, but Plaintiffs still fail to support the contention that the Village had a widespread practice constituting a custom or usage that caused Plaintiffs' constitutional violations. Accordingly, Plaintiffs have failed to properly allege a *Monell* claim by showing either an express policy, or widespread custom or practice, with sufficient detail to survive dismissal.

Nevertheless, Plaintiffs also assert a *Monell* claim based on Mayor Sexton and Trustee McKeown's final policy-making authority. We must assess whether Plaintiffs have pleaded enough to show that the Village's final policymakers were aware of these unofficial customs that allegedly caused Plaintiffs' constitutional violations. In

support of dismissal, the Village and Mayor Sexton provide the Village's municipal code to the Court to show that Mayor Sexton and Trustee McKeown never had the ability to review and oversee the internal policies, procedures, and regulations of the Village's Police Department. Plaintiffs argue that the inclusion of the Village's municipal code is not dispositive of the issue at hand at this stage of litigation.

Construing the facts and all reasonable inferences in favor of Plaintiffs, the question is "not whether [Plaintiffs] will ultimately prevail, but whether [their] [C]omplaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal citations and quotation marks omitted). After review, the well-pleaded allegations in Count II will presently stand as to Mayor Sexton and Trustee McKeown's final policy-making authority. Plaintiffs have alleged that Mayor Sexton was personally aware of the harassment and discrimination by Trustee McKeown and Officer McKeown, but allegedly did nothing to stop it. Plaintiffs also allege that Trustee McKeown apparently told police officers that responded to a disturbance that they could not do anything to him because he would call Mayor Sexton. The Village's alleged policy of failing to adequately and meaningfully train, supervise, or discipline its police officers, and to allow its trustees to behave outside the confines of the law without any fear of meaningful discipline or police investigation, is enough for the Court to draw the reasonable inference that Mayor Sexton and Trustee McKeown may have possessed, or had been delegated, final policy-making authority and acted with "deliberate indifference" to a pattern of

violations.  *See Pittman ex. rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 780 (7th Cir. 2014) (officials must be aware of risk posed by policies and fail to take appropriate steps to address the situation).  The Court can also infer that "the policy-making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned the misconduct of subordinate officers." *See Hahn*, 762 F.3d at 636.

We recognize that the determination of whether a person has policy-making authority is a question of state law, to be decided by the Court, and that the municipal code provided by the Village outlines authoritative roles.  However, we cannot make the assumption that every rule in the confines of the municipal code is followed with such fidelity.  The Court must look at various factors in deciding whether a certain individual or group has policy-making authority on any *particular* policy decision, including: (i) lack of "constrain[ts] by policies" made by others; (ii) lack of "meaningful review"; and (iii) a "grant of authority" to make the policy decision.  *Wragg v. Vill. of Thorton*, 604 F.3d 464, 468-69 (7th Cir. 2010) (emphasis in original).  Discovery will help establish these factors, and reveal the roles, if any, that Mayor Sexton and Trustee McKeown had in the final measurement of a subordinate's conduct for conformance with the municipal code.  More importantly, it will assist the Court in its ultimate determination of who in the Village of Evergreen Park maintains final policy-making authority with respect to the supervision of its police officers and trustees.  But at this present posture, and based on the allegations in the Complaint,

the Court can reasonably infer that Mayor Sexton and/or Trustee McKeown may have been delegated final policy-making authority over a subordinate employees' conduct. Therefore, the Village's motion to dismiss Count II is denied.

## III.    Count III—Intentional Infliction of Emotional Distress

Only Mayor Sexton moves for dismissal of Count III, arguing that Plaintiffs have failed to properly allege the necessary elements to support a claim for intentional infliction of emotional distress.  To state a claim for intentional infliction of emotional distress under Illinois law, Plaintiffs must allege: "(1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe and extreme emotional distress suffered by [Plaintiffs]; and (4) actual and proximate causation of the emotional distress by [Defendants'] outrageous conduct." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 89, 4 Ill.Dec. 652, 360 N.E.2d 765, 767-68 (1976)).  "This tort does not require a contemporaneous physical impact or injury."  *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  To constitute "extreme and outrageous" conduct, a defendant's behavior must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of human decency" such that a "reasonable person would hear the facts and be compelled to feelings of resentment and outrage." *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014).  Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Arce v. Chi. Transit Auth.*, No. 14 C 102, 2015 WL 3504860, at *9 (N.D.

Ill. June 2, 2015) (citing *Pub. Fin. Corp.*, 360 N.E. 2d at 767). For those with positions of authority, their conduct is subjected to heightened scrutiny under the "extreme and outrageous" standard. *Buchmeier v. City of Berwyn*, No. 14 C 6750, 2015 WL 4498742, at *7 (N.D. Ill. July 23, 2015).

In Count III, Plaintiffs allege that Trustee McKeown, Officer McKeown, and Mayor Sexton intentionally engaged in extreme and outrageous conduct. Plaintiffs allege that the named Defendants intended to inflict severe emotional distress on Plaintiffs or knew that there was a high probability that their conduct would result in severe emotional distress. Additionally, Plaintiffs claim that as a direct and proximate cause of Trustee McKeown, Officer McKeown, and Mayor Sexton's willful and wanton (and extreme and outrageous) conduct, Plaintiffs suffered severe emotional distress, including sleep disruptions, anxiety, and hyper-vigilance. Plaintiffs insist that Mayor Sexton's conduct was extreme and outrageous when he allowed Officer McKeown and Trustee McKeown to allegedly engage in, and continue, the discriminatory acts against Plaintiffs. In response, Mayor Sexton argues that Plaintiffs have not alleged that Mayor Sexton, himself, engaged in any "conduct" to be liable for intentional infliction of emotional distress and that Plaintiffs' theory of liability is premised on the purported failure of Mayor Sexton to remedy a situation over which he had no control.

The Court agrees with Mayor Sexton. We do not find Plaintiffs' allegations about Mayor Sexton to reach the requisite level of extreme and outrageous conduct.

Not only are we forbidden to rely on some of the conclusory allegations Plaintiffs provide, but we find that Plaintiffs' claims about Mayor Sexton's indirect, yet harmful, conduct to be too tenuous—especially when scrutinized against the actions of Officer McKeown and Trustee McKeown. For these reasons, the Court dismisses Count III against Mayor Sexton.

## IV. Count IV—Federal and State Conspiracy Claim

Trustee McKeown, Officer McKeown, and Mayor Sexton request dismissal of Plaintiffs' federal and state conspiracy claim. To present a sufficient Section 1983 claim for conspiracy to violate a constitutional right, Plaintiffs must state that "(1) a state official and private individual(s) reached an understanding to deprive [Plaintiffs] of [their] constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Walsh v. Kaluzny Brother's Inc.*, No. 14 C 3412, 2015 WL 6673835, at *4 (N.D. Ill. Oct. 30, 2015) (quoting *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Plaintiffs must further identify "the parties, the general purpose, and the approximate date of the conspiracy." *See Loubster v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (citations omitted).

In Count IV, Plaintiffs claim that "Trustee McKeown, Officer McKeown, and Mayor Sexton, along with unnamed co-conspirators, acted jointly in discriminating against, and intentionally inflicting emotional distress upon Plaintiffs." Plaintiffs further allege that "the named Defendants committed the overt acts set forth [in the Complaint] and the conspiracies were continuous and fully described [in the

Complaint]." The Court finds that Plaintiffs have failed to allege sufficient facts to plausibly suggest that Officer McKeown, Trustee McKeown, and Mayor Sexton conspired with each other.[2] For instance, Plaintiffs fail to: (i) articulate the agreement; (ii) give specific dates as to the conspiracy; and (iii) explain the purpose behind such a conspiracy. In fact, the Court is still unaware as to how and why the issues involving Plaintiffs and the McKeowns even commenced, but we will reserve such inquiries for after the parties conduct discovery. As a result, Plaintiffs' factual pleadings do not include the necessary allegations for either a federal or state conspiracy claim to survive dismissal. Count IV is hereby dismissed.[3]

## CONCLUSION

For the aforementioned reasons, the motions to dismiss are granted in part and denied in part.


_____
Charles P. Kocoras
United States District Judge


Dated: 11/30/2015

---

[2] We also find that Plaintiffs pleaded Count IV, a claim for federal *and* state conspiracy, in an inartful manner.

[3] To the extent that the Court finds that Plaintiffs have not raised facts sufficient to support a claim of conspiracy under federal or state law, they seek to amend their Complaint.